# EXHIBIT A

25A04827

No. _____

**Date Summons Issued and E-Filed**
7/11/2025

_____

/s/ Monique Roberts

_____
Deputy Clerk

Deposit Paid $ _____

**STATE COURT OF DEKALB COUNTY**
**GEORGIA, DEKALB COUNTY**

**SUMMONS**

Monique Foster

_____

Plaintiff's name and address

vs.

☒ **JURY**

Kimberly S. Point du Jour, M.D.

_____

2133 Ellis Farm Dr., Marietta, GA 30064

Defendant's name and address

**TO THE ABOVE-NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of State Court, Suite 230, 2nd Floor, Administrative Tower, DeKalb County Courthouse, 556 N. McDonough Street, Decatur, Georgia 30030 and serve upon the plaintiff's attorney, to wit:

Frank A. Ilardi
_____
Name
1201 Peachtree St., NE, Suite 2000, Atlanta, GA 30361
_____
Address
470-443-9060                                    382028
_____
Phone Number                           Georgia Bar No.

an **ANSWER** to the complaint which is herewith served upon you, within thirty (30) days after service upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. The answer or other responsive pleading can be filed via electronic filing through eFileGA via www.eFileGA.com or, if desired, at the e-filing public access terminal in the Clerk's Office at 556 N. McDonough Street, Decatur, Georgia 30030

_____                    _____
Defendant's Attorney                        Third Party Attorney

_____                    _____
Address                                     Address

_____                    _____
Phone No.              Georgia Bar No.      Phone No.              Georgia Bar No.

**TYPE OF SUIT**

☐ Personal Injury ☐ Products Liability          Principal $ _____
☐ Contract ☒ Medical Malpractice
☐ Legal Malpractice ☐ Product Liability          Interest $ _____
☐Other
                                                  Atty Fees $ _____
**Access to the e-filing site and the rules is available at www.dekalbstatecourt.net**
**To indicate consent to e-service check the box below.**
☒**(Plaintiff consents to e-service pursuant to OCGA 9-11-5 (f). The email address for service appears in the complaint.**

## IN THE STATE COURT OF DEKALB COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| MONIQUE FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO.  25A04827 |
| DEKALB PATHOLOGY, P.C., | ) | |
| VINAY B. GOWDA, M.D., | ) | |
| PIEDMONT HENRY HOSPITAL, INC., | ) | |
| THE UNIVERSITY OF TEXAS | ) | |
| M.D. ANDERSON CANCER CENTER, | ) | |
| JEANNELYN S. ESTRELLA, M.D., | ) | |
| PEACHTREE-PIEDMONT ASSOCIATES, P.C., | ) | |
| PEACHTREE LABORATORY ASSOCIATES, P.C., | ) | |
| PEACHTREE-PIEDMONT PATHOLOGY, P.C., | ) | |
| KATHERINE L. CHANDLER, M.D., | ) | |
| KIMBERLY S. POINT DU JOUR, M.D., | ) | |
| TAMELA M. SNYDER, M.D., | ) | |
| PIEDMONT HOSPITAL, INC., | ) | |
| PIEDMONT HEALTHCARE, INC., and | ) | |
| JOHN DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW the Plaintiff and files this lawsuit to be compensated for damages that were proximately caused by Defendants' negligence:

### PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Monique Foster ("Plaintiff") resides in Georgia. By filing this lawsuit, Plaintiff submits to the jurisdiction of this Court and to venue in DeKalb County.

STATE COURT OF
DEKALB COUNTY, GA.
7/11/2025 9:43 AM
E-FILED
BY: Monique Roberts

2.      Defendant DeKalb Pathology, P.C. ("DeKalb Pathology") is a domestic corporation that operates for profit in Georgia. DeKalb Pathology can be served through its registered agent, Shannon O'Brien, at 2701 North Decatur Road, DeKalb County, Georgia 30033.

3.      Defendant Vinay B. Gowda, M.D. ("Dr. Gowda") is a physician licensed to practice medicine in the State of Georgia. Dr. Gowda may be personally served at 3167 Roxboro Road NE, Atlanta, Georgia 30324 or wherever he is found.

4.      Defendant Piedmont Henry Hospital, Inc. ("Piedmont Henry Hospital") is a Georgia corporation that can be served through its registered agent, CSC of Cobb County, Inc., at 192 Anderson Street, NE, Suite 125, Marietta, Georgia 30060.

5.      Defendant The University of Texas M.D. Anderson Cancer Center ("MD Anderson") is a state / governmental agency that may be served through its president / the administrative head of MD Anderson, Peter Pisters, M.D., at 1515 Holcombe Boulevard, Houston, Texas 77030 with a copy to the Texas Attorney General, Ken Paxton, at 300 W. 15th Street, Austin, Texas 78701. Pre-suit notice of Plaintiff's claims against MD Anderson was not required because MD Anderson had actual notice that Plaintiff received some injury. Sovereign immunity is waived and abolished as to MD Anderson to the extent of liability for the torts of state employees while acting within the scope of employment.

6.      Defendant Jeannelyn S. Estrella, M.D. ("Dr. Estrella") is a physician licensed to practice medicine in the State of Texas. Dr. Estrella may be personally served at 1742 Sunset Boulevard, Unit 602, Houston, Texas 77005 or wherever she is found. To the extent that Dr. Estrella is a state employee, pre-suit notice of Plaintiff's claims was not required because Dr. Estrella had actual notice that Plaintiff received some injury. Sovereign

[2]

immunity is waived and abolished as to Dr. Estrella to the extent she was a state employee who was acting within the scope of her employment while making the medical diagnoses at issue in this case.

7.      Defendant Peachtree-Piedmont Associates, P.C. ("Peachtree Associates") is a domestic corporation that operates for profit in Georgia. Peachtree Associates can be served through its registered agent, Lainie Redding, at 1968 Peachtree Road NW, 77 Building, 4th Floor, Office 4107, Atlanta, Georgia 30309.

8.      Defendant Peachtree Laboratory Associates, P.C. ("Peachtree Lab") is a domestic corporation that operates for profit in Georgia. Peachtree Lab can be served through its registered agent, Lainie Redding, at 1968 Peachtree Road NW, 77 Building, 4th Floor, Office 4107, Atlanta, Georgia 30309.

9.      Defendant Peachtree-Piedmont Pathology, P.C. ("Piedmont Pathology") is a domestic corporation that operates for profit in Georgia. Piedmont Pathology can be served through its registered agent, Lainie Redding, at 1968 Peachtree Road NW, 77 Building, 4th Floor, Office 4107, Atlanta, Georgia 30309.

10.     Defendant Katherine L. Chandler, M.D. ("Dr. Chandler") is a physician licensed to practice medicine in the State of Georgia. Dr. Chandler may be personally served at 678 Sherwood Road NE, Atlanta, Georgia 30324 or wherever she is found.

11.     Defendant Kimberly S. Point du Jour, M.D. ("Dr. Point du Jour") is a physician licensed to practice medicine in the State of Georgia. Dr. Point du Jour may be personally served at 2133 Ellis Farm Drive, Marietta, Georgia 30064 or wherever she is found.

[3]

12.     Defendant Tamela M. Snyder, M.D. ("Dr. Snyder") is a physician licensed to practice medicine in the State of Georgia. Dr. Snyder may be personally served at 695 Norfleet Road NW, Atlanta, Georgia 30305 or wherever she is found.

13.     Defendant Piedmont Hospital, Inc. ("Piedmont Atlanta Hospital") is a Georgia corporation that can be served through its registered agent, CSC of Cobb County, Inc., at 192 Anderson Street, NE, Suite 125, Marietta, Georgia 30060.

14.     Defendant Piedmont Healthcare, Inc. ("Piedmont Healthcare") is the parent company that owns and operates Piedmont Henry Hospital and Piedmont Atlanta Hospital. Piedmont Healthcare can be served through its registered agent, CSC of Cobb County, Inc., at 192 Anderson Street, NE, Suite 125, Marietta, Georgia 30060.[1]

15.     Defendants John Does 1-5 are presently unknown persons and / or entities whose negligent acts and / or omissions caused, or contributed to cause, Plaintiff's injuries and damages.

16.     This Court has personal jurisdiction over DeKalb Pathology.

17.     This Court has personal jurisdiction over Dr. Gowda.

18.     This Court has personal jurisdiction over Piedmont Henry Hospital.

19.     This Court has personal jurisdiction over MD Anderson.

20.     This Court has personal jurisdiction over Dr. Estrella.

---

[1]     DeKalb Pathology, Dr. Gowda, Piedmont Henry Hospital, MD Anderson, Dr. Estrella, Peachtree Associates, Peachtree Lab, Piedmont Pathology, Dr. Chandler, Dr. Point du Jour, Dr. Snyder, Piedmont Atlanta Hospital, and Piedmont Healthcare are referred to collectively as "Defendants."

[4]

21.     This Court has personal jurisdiction over Peachtree Associates.

22.     This Court has personal jurisdiction over Peachtree Lab.

23.     This Court has personal jurisdiction over Piedmont Pathology.

24.     This Court has personal jurisdiction over Dr. Chandler.

25.     This Court has personal jurisdiction over Dr. Point du Jour.

26.     This Court has personal jurisdiction over Dr. Snyder.

27.     This Court has personal jurisdiction over Piedmont Atlanta Hospital.

28.     This Court has personal jurisdiction over Piedmont Healthcare.

29.     This Court has jurisdiction over the subject matter of this case.

30.     Venue is proper in DeKalb County.

## FACTS

31.     Plaintiff reasserts and incorporates the preceding paragraphs as if fully restated here.

32.     On July 13, 2023, Plaintiff presented to Atlanta Gastroenterology with complaints of intermittent and recurrent epigastric pain.

33.     On July 25, 2023, Dr. Hitesh Chokshi performed an endoscopic procedure on Plaintiff at Piedmont Henry Hospital and obtained biopsies from Plaintiff's stomach.

34.     Pathology slides were prepared from biopsies that Dr. Chokshi obtained on July 25, 2023 ("First Pathology Slides").

[5]

35. Dr. Gowda examined the First Pathology Slides with a microscope at Piedmont Henry Hospital and reported the following diagnosis in Plaintiff's medical records:

> **Final Diagnosis**
> Gastric fundus, biopsy:
> - Invasive poorly differentiated adenocarcinoma (poorly cohesive/diffuse type).
> - No Helicobacter pylori identified
>
> Electronically signed by Vinay B Gowda, MD on 8/3/2023 at 1231

36. Dr. Gowda is not fellowship-trained in gastrointestinal pathology.

37. Dr. Gowda does not have subspecialty expertise in gastrointestinal pathology.

38. The First Pathology Slides were also sent to MD Anderson, where Dr. Estrella examined them with a microscope and reported the following diagnosis in Plaintiff's medical records:

> **Diagnosis**
> Five outside slides (HS23-04319, collected on 7/25/2023):
>
> Stomach, fundus, biopsy:
>   INVASIVE, POORLY DIFFERENTIATED ADENOCARCINOMA (POORLY COHESIVE/DIFFUSE TYPE) (REF COMMENT)
>   No Helicobacter pylori (submitted immunohistochemical stain) identified
>
> Electronically signed by Jeannelyn S. Estrella, MD on 8/3/2023 at 7:26 PM

39. On August 2, 2023, Dr. Chokshi performed another endoscopic procedure on Plaintiff at Piedmont Henry Hospital and obtained a second set of biopsies from Plaintiff's stomach.

40. Pathology slides were prepared from biopsies that Dr. Chokshi obtained on August 2, 2023 ("Second Pathology Slides").

41. Dr. Gowda examined the Second Pathology Slides with a microscope at Piedmont Henry Hospital and reported the following diagnosis in Plaintiff's medical records:

[6]

**Final Diagnosis**
Gastric body, biopsy:
 – Rare atypical cell, suspicious for carcinoma.
 – Abundant gastric mucosa with severe acute inflammation and ulceration.
 – Positive for Helicobacter pylori-like organisms.

                    Electronically signed by Vinay B Gowda, MD on 8/4/2023 at 1307

42.    On August 7, 2023, Dr. Mihajlo Gjeorgjievski performed an endoscopic procedure on

       Plaintiff at Piedmont Atlanta Hospital and obtained a third set of biopsies from Plaintiff's

       stomach.

43.    Pathology slides were prepared from biopsies that Dr. Gjeorgjievski obtained on August 7,

       2023 ("Third Pathology Slides").

44.    Dr. Chandler examined the Third Pathology Slides with a microscope at Piedmont Atlanta

       Hospital and reported the following diagnosis in Plaintiff's medical records:

**Final Diagnosis**
A.  Lymph node, perigastric, biopsy:
        – Negative for malignant cells
        – Fragments of benign lymphoid tissue.

B.  Stomach, biopsy:
        – Rare malignant cells consistent with adenocarcinoma (see comment)

C.  Stomach, biopsy:
        – Rare malignant cells consistent with adenocarcinoma (see comment).

                    Electronically signed by Katherine Chandler, MD on 8/11/2023 at 1738

45.    Dr. Chandler is not fellowship-trained in gastrointestinal pathology.

46.    Dr. Chandler does not have subspecialty expertise in gastrointestinal pathology.

47.    Dr. Point du Jour and Dr. Snyder provided "intradepartmental consultation" to

       Dr. Chandler regarding the diagnosis for the Third Pathology Slides.

48.    Dr. Point du Jour is not fellowship-trained in gastrointestinal pathology.

49.    Dr. Point du Jour does not have subspecialty expertise in gastrointestinal pathology.

50.    Dr. Snyder is not fellowship-trained in gastrointestinal pathology.

51.    Dr. Snyder does not have subspecialty expertise in gastrointestinal pathology.

52.    Plaintiff underwent a near total / partial gastrectomy at Piedmont Atlanta Hospital on August 30, 2023.

53.    No cancer was reported on pathology slides prepared from portions of Plaintiff's stomach that were removed on August 30, 2023.

54.    Plaintiff underwent a total / complete gastrectomy at Piedmont Atlanta Hospital on September 7, 2023.

55.    No cancer was reported on pathology slides prepared from portions of Plaintiff's stomach that were removed on September 7, 2023.

56.    MD Anderson subsequently confirmed that the First Pathology Slides did not support a diagnosis of cancer, rather, the correct diagnosis was "[s]evere chronic gastritis."

57.    Gastritis is inflammation of the stomach lining that is treated medically – not by removing some, or all, of a patient's stomach.

58.    The Third Pathology Slides were sent to Johns Hopkins Reference Laboratories, where it was determined that cells on the Third Pathology Slides are not consistent with cancer and, instead, are "benign."

## RESPONDEAT SUPERIOR
(DeKalb Pathology, Piedmont Henry Hospital,
Piedmont Healthcare, and Dr. Gowda)

59.   Plaintiff reasserts and incorporates the preceding paragraphs as if fully restated here.

60.   Dr. Gowda was an employee of DeKalb Pathology, Piedmont Henry Hospital, and / or Piedmont Healthcare in July 2023.

61.   Dr. Gowda acted within the course and scope of his employment with DeKalb Pathology, Piedmont Henry Hospital, and / or Piedmont Healthcare when he examined the First Pathology Slides.

62.   Dr. Gowda acted within the course and scope of his employment with DeKalb Pathology, Piedmont Henry Hospital, and / or Piedmont Healthcare when he reported the diagnosis for the First Pathology Slides.

63.   Dr. Gowda was an agent of DeKalb Pathology, Piedmont Henry Hospital, and / or Piedmont Healthcare in July 2023.

64.   Dr. Gowda acted within the course and scope of his agency relationship with DeKalb Pathology, Piedmont Henry Hospital, and / or Piedmont Healthcare when he examined the First Pathology Slides.

65.   Dr. Gowda acted within the course and scope of his agency relationship with DeKalb Pathology, Piedmont Henry Hospital, and / or Piedmont Atlanta when he reported the diagnosis for the First Pathology Slides.

[9]

## RESPONDEAT SUPERIOR
(MD Anderson and Dr. Estrella)

66.     Plaintiff reasserts and incorporates the preceding paragraphs as if fully restated here.

67.     Dr. Estrella was an employee of MD Anderson in July 2023.

68.     Dr. Estrella acted within the course and scope of her employment with MD Anderson when she examined the First Pathology Slides.

69.     Dr. Estrella acted within the course and scope of her employment with MD Anderson when she made and reported her diagnosis for the First Pathology Slides.

70.     Dr. Estrella was an agent of MD Anderson in July 2023.

71.     Dr. Estrella acted within the course and scope of her agency relationship with MD Anderson when she examined the First Pathology Slides.

72.     Dr. Estrella acted within the course and scope of her agency relationship with MD Anderson when she reported the diagnosis for the First Pathology Slides.

## RESPONDEAT SUPERIOR
(Peachtree Associates, Peachtree Lab, Piedmont Pathology,
Piedmont Atlanta Hospital, Piedmont Healthcare, and Dr. Chandler)

73.     Plaintiff reasserts and incorporates the preceding paragraphs as if fully restated here.

74.     Dr. Chandler was an employee of Peachtree Associates, Peachtree Lab, Piedmont Pathology, Piedmont Atlanta Hospital, and / or Piedmont Healthcare in August 2023.

[10]

75.    Dr. Chandler acted within the course and scope of her employment with Peachtree Associates, Peachtree Lab, Piedmont Pathology, Piedmont Atlanta Hospital, and / or Piedmont Healthcare when she examined the Third Pathology Slides.

76.    Dr. Chandler acted within the course and scope of her employment with Peachtree Associates, Peachtree Lab, Piedmont Pathology, Piedmont Atlanta Hospital, and / or Piedmont Healthcare when she reported her diagnosis for the Third Pathology Slides.

77.    Dr. Chandler was an agent of Peachtree Associates, Peachtree Lab, Piedmont Pathology, Piedmont Atlanta Hospital, and / or Piedmont Healthcare in August 2023.

78.    Dr. Chandler acted within the course and scope of her agency relationship with Peachtree Associates, Peachtree Lab, Piedmont Pathology, Piedmont Atlanta Hospital, and / or Piedmont Healthcare when she examined the Third Pathology Slides.

79.    Dr. Chandler acted within the course and scope of her agency relationship with Peachtree Associates, Peachtree Lab, Piedmont Pathology, Piedmont Atlanta Hospital, and / or Piedmont Healthcare when she reported the diagnosis for the Third Pathology Slides.

### RESPONDEAT SUPERIOR
(Peachtree Associates, Peachtree Lab, Piedmont Pathology,
Piedmont Atlanta Hospital, Piedmont Healthcare, and Dr. Point du Jour)

80.    Plaintiff reasserts and incorporates the preceding paragraphs as if fully restated here.

81.    Dr. Point du Jour was an employee of Peachtree Associates, Peachtree Lab, Piedmont Pathology, Piedmont Atlanta Hospital, and / or Piedmont Healthcare in August 2023.

82.    Dr. Point du Jour acted within the course and scope of her employment with Peachtree Associates, Peachtree Lab, Piedmont Pathology, Piedmont Atlanta Hospital, and / or

[11]

Piedmont Healthcare when she consulted with Dr. Chandler about the diagnosis for the Third Pathology Slides.

83.    Dr. Point du Jour was an agent of Peachtree Associates, Peachtree Lab, Piedmont Pathology, Piedmont Atlanta Hospital, and / or Piedmont Healthcare in August 2023.

84.    Dr. Point du Jour acted within the course and scope of her agency relationship with Peachtree Associates, Peachtree Lab, Piedmont Pathology, Piedmont Atlanta Hospital, and / or Piedmont Healthcare when she consulted with Dr. Chandler about the diagnosis for the Third Pathology Slides.

### RESPONDEAT SUPERIOR
(Peachtree Associates, Peachtree Lab, Piedmont Pathology,
Piedmont Atlanta Hospital, Piedmont Healthcare, and Dr. Snyder)

85.    Plaintiff reasserts and incorporates the preceding paragraphs as if fully restated here.

86.    Dr. Snyder was an employee of Peachtree Associates, Peachtree Lab, Piedmont Pathology, Piedmont Atlanta Hospital, and / or Piedmont Healthcare in August 2023.

87.    Dr. Snyder acted within the course and scope of her employment with Peachtree Associates, Peachtree Lab, Piedmont Pathology, Piedmont Atlanta Hospital, and / or Piedmont Healthcare when she consulted with Dr. Chandler about the diagnosis for the Third Pathology Slides.

88.    Dr. Snyder was an agent of Peachtree Associates, Peachtree Lab, Piedmont Pathology, Piedmont Atlanta Hospital, and / or Piedmont Healthcare in August 2023.

89.    Dr. Snyder acted within the course and scope of her agency relationship with Peachtree Associates, Peachtree Lab, Piedmont Pathology, Piedmont Atlanta Hospital, and / or

[12]

Piedmont Healthcare when she consulted with Dr. Chandler about the diagnosis for the Third Pathology Slides.

## THE STANDARD OF CARE

90.    Plaintiff reasserts and incorporates the preceding paragraphs as if fully restated here.

91.    The standard of care is that degree of care and skill ordinarily employed by physicians generally under similar conditions and like surrounding circumstances.

92.    With regard to pathologists who review and consult on pathology slides prepared from biopsies, the standard of care is to examine each slide carefully, accurately diagnose the presence and type of disease (if any) on the slide, and then prudently report all pertinent findings while knowing that the pathologist's diagnosis guides – and often determines – the patient's treatment.

93.    Plaintiff attaches as Exhibit "1" and incorporates herein the affidavit of Robert D. Odze, M.D., F.R.C.P.C., a duly qualified physician, competent to testify in this matter, setting forth at least one specific act of negligence by each of the Defendants, thus fulfilling the requirements of O.C.G.A. § 9-11-9.1.

## MEDICAL MALPRACTICE – COUNT ONE
(DeKalb Pathology, Piedmont Henry Hospital,
Piedmont Healthcare, and Dr. Gowda)

94.    Plaintiff reasserts and incorporates the preceding paragraphs as if fully restated here.

95.    Dr. Gowda owed a duty to provide Plaintiff with medical care consistent with the standard of care for physicians in general and pathologists in particular.

[13]

96.    Plaintiff did not have stomach cancer when Dr. Gowda reviewed the First Pathology Slides.

97.    Plaintiff did not have stomach cancer when Dr. Gowda reported the diagnosis for the First Pathology Slides.

98.    The First Pathology Slides do not support a diagnosis of adenocarcinoma.

99.    Dr. Gowda was negligent and breached his duty to Plaintiff by reporting a diagnosis of adenocarcinoma based on the First Pathology Slides.

100.   DeKalb Pathology, Piedmont Henry Hospital, and / or Piedmont Healthcare is vicariously liable to Plaintiff for, and responsible for payment of, her special and general damages that were proximately caused by Dr. Gowda's negligent acts and omissions with regard to the First Pathology Slides.

101.   Dr. Gowda is liable to Plaintiff for, and responsible for payment of, her special and general damages that were proximately caused by Dr. Gowda's negligent acts and omissions with regard to the First Pathology Slides.

## MEDICAL MALPRACTICE – COUNT TWO
(MD Anderson and Dr. Estrella)

102.   Plaintiff reasserts and incorporates the preceding paragraphs as if fully restated here.

103.   Dr. Estrella owed a duty to provide Plaintiff with medical care consistent with the standard of care for physicians in general and pathologists in particular.

104.   Plaintiff did not have stomach cancer when Dr. Estrella reviewed the First Pathology Slides.

[14]

105.    Plaintiff did not have stomach cancer when Dr. Estrella reported the diagnosis for the First Pathology Slides.

106.    The First Pathology Slides do not support a diagnosis of adenocarcinoma.

107.    Dr. Estrella was negligent and breached her duty to Plaintiff by reporting a diagnosis of adenocarcinoma based on the First Pathology Slides.

108.    MD Anderson is vicariously liable to Plaintiff for, and responsible for payment of, her special and general damages that were proximately caused by Dr. Estrella's negligent acts and omissions with regard to the First Pathology Slides.

109.    Alternatively, if Dr. Estrella was not acting within the course and scope of employment with MD Anderson when she examined the First Pathology Slides and reported her corresponding diagnosis, then Dr. Estrella and her *de facto* employer are liable to Plaintiff for, and responsible for payment of, her special and general damages that were proximately caused by Dr. Estrella's negligent acts and omissions with regard to the First Pathology Slides.

## INSTITUTIONAL NEGLIGENCE – COUNT THREE
(Piedmont Henry Hospital and Piedmont Healthcare)

110.    Plaintiff reasserts and incorporates the preceding paragraphs as if fully restated here.

111.    The leadership, management, and administrative roles at Piedmont Henry Hospital and Piedmont Healthcare do not require professional licensure as a healthcare provider by the State of Georgia.

[15]

112.  Multiple members of the Board of Directors of Piedmont Henry Hospital and Piedmont Healthcare are not licensed healthcare providers.

113.  Multiple members of the leadership / administration of Piedmont Henry Hospital and Piedmont Healthcare are not licensed healthcare providers.

114.  Piedmont Henry Hospital and Piedmont Healthcare owe their patients, including Plaintiff, a duty of ordinary care to manage the hospital in a manner designed to safeguard against pathology misreads and unnecessary surgeries.

115.  System failures by Piedmont Henry Hospital and / or Piedmont Healthcare caused or contributed to Plaintiff's injuries and damages.

**MEDICAL MALPRACTICE – COUNT FOUR**
(Peachtree Associates, Peachtree Lab, Piedmont Pathology,
Piedmont Atlanta Hospital, Piedmont Healthcare, and Dr. Chandler)

116.  Plaintiff reasserts and incorporates the preceding paragraphs as if fully restated here.

117.  Dr. Chandler owed a duty to provide Plaintiff with medical care consistent with the standard of care for physicians in general and pathologists in particular.

118.  Plaintiff did not have stomach cancer when Dr. Chandler reviewed the Third Pathology Slides.

119.  Plaintiff did not have stomach cancer when Dr. Chandler reported the diagnosis for the Third Pathology Slides.

120.  The Third Pathology Slides do not support a diagnosis of malignancy and / or consistency with adenocarcinoma.

[16]

121.    Dr. Chandler was negligent and breached her duty to Plaintiff by reporting a diagnosis that cells on the Third Pathology Slides were malignant and consistent with adenocarcinoma.

122.    Peachtree Associates, Peachtree Lab, Piedmont Pathology, Piedmont Atlanta Hospital, and / or Piedmont Healthcare are vicariously liable to Plaintiff for, and responsible for payment of, her special and general damages that were proximately caused by Dr. Chandler's negligent acts and omissions with regard to the Third Pathology Slides.

123.    Dr. Chandler is liable to Plaintiff for, and responsible for payment of, her special and general damages that were proximately caused by Dr. Chandler's negligent acts and omissions with regard to the Third Pathology Slides.

### MEDICAL MALPRACTICE – COUNT FIVE
(Peachtree Associates, Peachtree Lab, Piedmont Pathology,
Piedmont Atlanta Hospital, Piedmont Healthcare, and Dr. Point du Jour)

124.    Plaintiff reasserts and incorporates the preceding paragraphs as if fully restated here.

125.    Dr. Point du Jour owed a duty to provide Plaintiff with medical care consistent with the standard of care for physicians in general and pathologists in particular.

126.    Dr. Point du Jour was negligent and breached her duty to Plaintiff by agreeing with the diagnosis that cells on the Third Pathology Slides were malignant and consistent with adenocarcinoma.

127.    Peachtree Associates, Peachtree Lab, Piedmont Pathology, Piedmont Atlanta Hospital, and / or Piedmont Healthcare are vicariously liable to Plaintiff for, and responsible for payment of, her special and general damages that were proximately caused by Dr. Point du Jour's negligent acts and omissions with regard to the Third Pathology Slides.

[17]

128.    Dr. Point du Jour is liable to Plaintiff for, and responsible for payment of, her special and general damages that were proximately caused by Dr. Point du Jour's negligent acts and omissions with regard to the Third Pathology Slides.

## MEDICAL MALPRACTICE – COUNT SIX
(Peachtree Associates, Peachtree Lab, Piedmont Pathology,
Piedmont Atlanta Hospital, Piedmont Healthcare, and Dr. Snyder)

129.    Plaintiff reasserts and incorporates the preceding paragraphs as if fully restated here.

130.    Dr. Snyder owed a duty to provide Plaintiff with medical care consistent with the standard of care for physicians in general and pathologists in particular.

131.    Dr. Snyder was negligent and breached her duty to Plaintiff by agreeing with the diagnosis that cells on the Third Pathology Slides were malignant and consistent with adenocarcinoma.

132.    Peachtree Associates, Peachtree Lab, Piedmont Pathology, Piedmont Atlanta Hospital, and / or Piedmont Healthcare are vicariously liable to Plaintiff for, and responsible for payment of, her special and general damages that were proximately caused by Dr. Snyder's negligent acts and omissions with regard to the Third Pathology Slides.

133.    Dr. Snyder is liable to Plaintiff for, and responsible for payment of, her special and general damages that were proximately caused by Dr. Snyder's negligent acts and omissions with regard to the Third Pathology Slides.

## INSTITUTIONAL NEGLIGENCE – COUNT SEVEN
(Piedmont Atlanta Hospital and Piedmont Healthcare)

134.    Plaintiff reasserts and incorporates the preceding paragraphs as if fully restated here.

[18]

135.   The leadership, management, and administrative roles at Piedmont Atlanta Hospital and Piedmont Healthcare do not require professional licensure as a healthcare provider by the State of Georgia.

136.   Multiple members of the Board of Directors of Piedmont Atlanta Hospital and Piedmont Healthcare are not licensed healthcare providers.

137.   Multiple members of the leadership / administration of Piedmont Atlanta Hospital and Piedmont Healthcare are not licensed healthcare providers.

138.   Piedmont Atlanta Hospital and Piedmont Healthcare owe their patients, including Plaintiff, a duty of ordinary care to manage the hospital in a manner designed to safeguard against pathology misreads and unnecessary surgeries.

139.   System failures by Piedmont Atlanta Hospital and Piedmont Healthcare caused or contributed to Plaintiff's injuries and damages.

### ATTORNEYS' FEES AND LITIGATION EXPENSES – COUNT EIGHT
(All Defendants)

140.   Plaintiff reasserts and incorporates the preceding paragraphs as if fully restated here.

141.   Plaintiff shows that Defendants have acted in bad faith, have been stubbornly litigious, and / or have caused Plaintiff unnecessary trouble and expense, thereby entitling Plaintiff to her expenses of litigation, including reasonable attorneys' fees, in amounts to be determined at trial.

### DAMAGES

142.   Plaintiff reasserts and incorporates the preceding paragraphs as if fully restated here.

[19]

143.    Plaintiff has incurred special damages including past and future medical expenses as a direct and proximate result of Defendants' negligence.

144.    Plaintiff has endured, and will continue to endure, pain and suffering, mental anguish, emotional distress, loss of the capacity to labor, and loss of the capacity for the enjoyment of life as a direct and proximate result of Defendants' negligence.

145.    Plaintiff states her intention to bring each and every permissible, proper, and authorized claim for damages under Georgia law.

**WHEREFORE**, Plaintiff respectfully prays and demands as follows:

A.    That Process and Summons issue requiring Defendants to appear and answer this Complaint;

B.    That service be had upon Defendants as provided by law;

C.    That Plaintiff have a trial by a jury as to all issues;

D.    That judgment be entered in Plaintiff's favor against some or all Defendants in an amount in excess of $10,000.00;

E.    That Plaintiff be compensated by some or all Defendants for all damages including, but not limited to, all general, special, compensatory, economic, and other allowable damages, in accordance with the enlightened conscience of an impartial jury;

F.    That Plaintiff recover her expenses of litigation, including attorneys' fees;

G.    That all costs be taxed against some or all Defendants; and

[20]

H.    That Plaintiff have such other and further relief as the Court may deem just
and proper.

Respectfully submitted, this the 11th day of July, 2025.

**MORGAN & MORGAN ATLANTA, PLLC**

*/s/ Keenan R.S. Nix*
Keenan R.S. Nix
Georgia Bar No. 544855
Christopher J. Graddock
Georgia Bar No. 304020
*Counsel for Plaintiff*

Post Office Box 57007
Atlanta, Georgia 30343-1007
Phone: (404) 965-8811
Fax: (404) 965-8812
Email: knix@forthepeople.com
Email: cgraddock@forthepeople.com

**ILARDI LAW, LLC**

*/s/ Frank A. Ilardi*
Frank A. Ilardi
Georgia Bar No. 382028
*Co-Counsel for Plaintiff*

1201 Peachtree Street, NE – Suite 2000
Atlanta, Georgia 30361
Phone / Fax: (470) 443-9060
Email: frank@ilawgeorgia.com

STATE COURT OF
DEKALB COUNTY, GA.
7/11/2025 9:43 AM
E-FILED
BY: Monique Roberts

[21]

# EXHIBIT 1

## AFFIDAVIT OF ROBERT D. ODZE, M.D., F.R.C.P.C.

ROBERT D. ODZE, M.D., F.R.C.P.C. personally appeared before the undersigned officer, duly authorized to administer oaths, to state as follows:

### Introduction

1    This Affidavit addresses medical care that was provided to Monique Foster in July 2023 and August 2023.

2    This Affidavit is provided for the limited purpose of satisfying the requirements of Georgia law O.C.G.A. § 9-11-9.1

3    I use the phrase "standard of care" as I understand it to be defined under Georgia law, meaning that degree of care and skill ordinarily employed by physicians generally under similar conditions and like surrounding circumstances

### Expert Qualifications

4    I am over 18 years of age and suffer from no legal disabilities.

5    I am qualified to provide expert testimony under Georgia law O.C.G.A. § 24-7-702 because in July 2023 and August 2023:

    a    I was licensed by an appropriate regulatory agency (State of Massachusetts) to practice my profession (medicine) in the state in which I was practicing or teaching in the profession (Massachusetts).

    b    I had actual professional knowledge and experience in the area of practice or specialty (pathology) in which my opinions are given as the result of having been regularly engaged in the active practice of such area of specialty (pathology) of my profession (medicine) for at least three of the preceding five years, with sufficient frequency (reviewing thousands of pathology slides while working approximately

5 days a week consistently for over 30 years) to establish an appropriate level of knowledge in diagnosing the condition (gastrointestinal cancers) which was performed or rendered negligently by the physicians whose conduct is at issue

6    My *curriculum vitae*, which is attached and incorporated by reference, contains additional information about my training and experience.

## Evidence Considered

7    I examined the following pathology slides prepared from tissue samples obtained from Monique Foster:

    (a)    Accession # HS23-04319 (collected 7/25/2023)("First Pathology Slides");

    (b)    Accession # HS23-04493 (collected 8/02/2023)("Second Pathology Slides");

    (c)    Accession # PC23-01787 (collected 8/07/2023)("Third Pathology Slides");

    (d)    Accession # PS23-16724 (collected 8/30/2023); and

    (e)    Accession # PS23-16796 (collected 9/07/2023)

8    I also reviewed Monique Foster's medical records from

    (a)    Atlanta Gastroenterology;

    (b)    Piedmont Henry Hospital,

    (c)    Piedmont Atlanta Hospital;

    (d)    M.D. Anderson Cancer Center; and

    (e)    Piedmont Heart Institute

## Summary of Facts

9    This summary is not intended to include all potentially relevant information from Monique Foster's medical records.

- 2 -

10. On July 25, 2023, Dr. Hitesh Chokshi performed an endoscopic procedure on Ms. Foster at Piedmont Henry Hospital and obtained biopsies from her stomach

12 The First Pathology Slides were prepared from biopsies that Dr. Chokshi obtained on July 25, 2023.

13 Dr. Vinay B. Gowda examined the First Pathology Slides with a microscope at Piedmont Henry Hospital and made the following diagnosis:

---

**Final Diagnosis**
Gastric fundus  biopsy
Invasive poorly differentiated adenocarcinoma (poorly cohesive/diffuse type)
- No Helicobacter pylori identified

Electronically signed by Vinay B Gowda  MD on 8/3/2023 at 1231

---

14 The First Pathology Slides were also sent to M.D. Anderson Cancer Center, where Dr. Jeannelyn S. Estrella examined them with a microscope and made the following diagnosis

---

**Diagnosis**
Fine needle biopsy (HS23-04119  collected on 7/25/2023)

  'stomach, fundus, biopsy
     INVASIVE  POORLY DIFFERENTIATED ADENOCARCINOMA (POORLY COHESIVE/DIFFUSE  TYPE;  SEE COMMENT)
    No Helicobacter pylori identified immunohistochemical stain) identified

                    Electronically signed by Jeannelyn S Estrella MD on 8/3/2023 at 7 36 PM

---

15 On August 2, 2023, Dr. Chokshi performed another endoscopic procedure on Ms. Foster at Piedmont Henry Hospital and obtained a second set of biopsies from her stomach

16. The Second Pathology Slides were prepared from biopsies that Dr. Chokshi obtained on August 2, 2023

17    Dr. Gowda examined the Second Pathology Slides with a microscope at Piedmont Henry Hospital and made the following diagnosis:

> **Final Diagnosis**
> Gastric body, biopsy:
> - Rare atypical cell, suspicious for carcinoma.
> - Abundant gastric mucosa with severe acute inflammation and ulceration.
> - Positive for Helicobacter pylori-like organisms.
>                     Electronically signed by Vinay B Gowda, MD on 8/4/2023 at 1307

19    On August 7, 2023, Dr. Mihajlo Gjeorgjievski performed an endoscopic procedure on Ms Foster at Piedmont Atlanta Hospital and obtained a third set of biopsies from her stomach.

20    The Third Pathology Slides were prepared from biopsies that Dr. Gjeorgjievski obtained on August 7, 2023

21    Dr. Katherine L. Chandler examined the Third Pathology Slides with a microscope at Piedmont Atlanta Hospital and made the following diagnosis:

> **Final Diagnosis**
> A  Lymph node, perigastric, biopsy
>        - Negative for malignant cells
>        - Fragments of benign lymphoid tissue
>
> B  Stomach, biopsy:
>        - Rare malignant cells consistent with adenocarcinoma (see comment)
>
> C  Stomach biopsy
>        - Rare malignant cells consistent with adenocarcinoma (see comment)
>                     Electronically signed by Katherine Chandler, MD on 8-11/2023 at 1738

22    Dr. Kimberly S. Point du Jour and Dr. Tamela M. Snyder provided "intradepartmental consultation" to Dr. Chandler regarding the diagnosis for the Third Pathology Slides.

23    Ms. Foster underwent a near total / partial gastrectomy at Piedmont Atlanta Hospital on August 30, 2023

24      No cancer was reported on pathology slides prepared from portions of Ms Foster's stomach that were removed on August 30, 2023

25      Ms Foster underwent a total / complete gastrectomy at Piedmont Atlanta Hospital on September 7, 2023

26.     No cancer was reported on pathology slides prepared from portions of Ms Foster's stomach that were removed on September 7, 2023

27      M.D. Anderson Cancer Center subsequently confirmed that the First Pathology Slides did not support a diagnosis of cancer, rather, the correct diagnosis was "[s]evere chronic gastritis "

28      The Third Pathology Slides were sent to Johns Hopkins Reference Laboratories, where it was determined that the Third Pathology Slides are not consistent with cancer and, instead, are "benign "

## **Principal Opinions**

29.     My principal opinions are summarized here In deposition or trial testimony I may elaborate, and in doing so I may offer related, subsidiary, or incidental opinions.

30      In July and August of 2023, the standard of care for pathologists who reviewed and consulted on slides was to examine each slide carefully, accurately diagnose the presence and type of disease (if any) on the slide, and then prudently report all pertinent findings while knowing that the pathologist's diagnosis guides – and often determines – the patient's treatment

31      It was beneath the standard of care for Dr. Gowda to make the diagnosis that there was adenocarcinoma on the First Pathology Slides. Instead, a reasonable pathologist reviewing the First Pathology Slides would have made a diagnosis of no worse than atypical

- 5 -

32    It was beneath the standard of care for Dr. Estrella to make the diagnosis that there was adenocarcinoma on the First Pathology Slides. Instead, a reasonable pathologist reviewing the First Pathology Slides would have made a diagnosis of no worse than atypical

33.   It was beneath the standard of care for Dr. Chandler to make the diagnosis that cells on the Third Pathology Slides were malignant and consistent with adenocarcinoma. Instead, a reasonable pathologist reviewing the Third Pathology Slides would have made a diagnosis of no worse than atypical

34    Assuming that Dr. Point du Jour reviewed the Third Pathology Slides under a microscope, then it was beneath the standard of care for Dr. Point du Jour to agree with the diagnosis that cells on the Third Pathology Slides were malignant and consistent with adenocarcinoma. Instead, a reasonable pathologist reviewing the Third Pathology Slides would have made a diagnosis of no worse than atypical

35    Assuming that Dr. Snyder reviewed the Third Pathology Slides under a microscope, then it was beneath the standard of care for Dr. Snyder to agree with the diagnosis that cells on the Third Pathology Slides were malignant and consistent with adenocarcinoma. Instead, a reasonable pathologist reviewing the Third Pathology Slides would have made a diagnosis of no worse than atypical.

36    I understand that Georgia law requires an expert to identify one specific act of professional negligence against each named defendant in a case like this. To that end, and based on these understandings, I restate the standard of care violations discussed above and apply them to each physician's principals and / or employers as follows

       (a)    Dr. Gowda – DeKalb Pathology, P.C., Piedmont Henry Hospital, Inc. and / or Piedmont Healthcare, Inc.,

- 6 -

(b) Dr. Estrella – The University of Texas M.D. Anderson Cancer Center.

(c) Dr. Chandler – Peachtree-Piedmont Associates, P.C., Peachtree Laboratory Associates, P.C., Peachtree-Piedmont Pathology, P.C., Piedmont Hospital, Inc., and / or Piedmont Healthcare, Inc.;

(d) Dr. Point du Jour – Peachtree-Piedmont Associates, P.C., Peachtree Laboratory Associates, P.C., Peachtree-Piedmont Pathology, P.C., Piedmont Hospital, Inc., and / or Piedmont Healthcare, Inc.; and

(e) Dr. Snyder – Peachtree-Piedmont Associates, P.C., Peachtree Laboratory Associates, P.C., Peachtree-Piedmont Pathology, P.C., Piedmont Hospital, Inc., and / or Piedmont Healthcare, Inc.

39. I hold all of the opinions expressed above to a reasonable degree of medical certainty – that is, more likely than not.

40. My views may change as additional information becomes available.

This the _10th_ day of July, 2025.

               _____

               ROBERT D. ODZE, M.D., F.R.C.P.C.

Sworn to and subscribed before me this
the _10th_ day of _JULY_, 2025.


Notary Public:

KATIE BECKLES
NOTARY PUBLIC
Commonwealth of Massachusetts
My Commission Expires on
February 19, 2027

- 7 -

**IN THE STATE COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| MONIQUE FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO.  25A04827 |
| DEKALB PATHOLOGY, P.C., | ) | |
| VINAY B. GOWDA, M.D., | ) | |
| PIEDMONT HENRY HOSPITAL, INC., | ) | |
| THE UNIVERSITY OF TEXAS | ) | |
| M.D. ANDERSON CANCER CENTER, | ) | |
| JEANNELYN S. ESTRELLA, M.D., | ) | |
| PEACHTREE-PIEDMONT ASSOCIATES, P.C., | ) | |
| PEACHTREE LABORATORY ASSOCIATES, P.C., | ) | |
| PEACHTREE-PIEDMONT PATHOLOGY, P.C., | ) | |
| KATHERINE L. CHANDLER, M.D., | ) | |
| KIMBERLY S. POINT DU JOUR, M.D., | ) | |
| TAMELA M. SNYDER, M.D., | ) | |
| PIEDMONT HOSPITAL, INC., | ) | |
| PIEDMONT HEALTHCARE, INC., and | ) | |
| JOHN DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF MONIQUE FOSTER'S REQUESTS FOR ADMISSION**
**TO DEFENDANT KIMBERLY S. POINT DU JOUR, M.D.**

Plaintiff Monique Foster propounds the following Requests for Admission to Defendant Kimberly S. Point du Jour, M.D. pursuant to O.C.G.A. § 9-11-36:

**INSTRUCTIONS**

Pursuant to *G.H. Bass & Co. v. Fulton County Bd. of Tax Assessors*, 268 Ga. 327 (1997), requests for admission may require the respondent to apply law to facts and then provide opinions or conclusions of law. If any request cannot be truthfully admitted or denied, please state in detail the reasons why you cannot truthfully admit or deny the matter. If you cannot admit or deny the

request in its entirety, please specify that part which you cannot admit or deny and state in detail the reasons for any such qualification. If you assert any claim of privilege in response to any or all of these requests, set forth, with respect to each such request(s) as to which a claim of privilege is asserted, the nature of the privileged claimed (e.g. attorney-client, work product, etc.) and the basis for your claim.

## DEFINITIONS

1.    "You" or "your" means the person or entity to whom these discovery requests are addressed; its officers, directors, agents and employees; or any merged, consolidated, or acquired predecessor or successor, parent, subsidiary, division, or affiliate; or any person acting on your behalf; or any person within a "controlled group of corporations" of which you are a member.

2.    "Person" means any individual, corporation, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, or other such entity.

3.    "Communicate" or "communications" means very manner or means of disclosure, transfer, or exchange, and disclosure, transfer or exchange of information whether orally or by document or whether face-to-face, by telephone, mail, personal delivery, or otherwise.

4.    "Document" is used in the broadest possible sense meaning anything which may be considered to be a document within the meaning of the rules of the Rules of Civil Procedure and means and includes, without limitation, any written, printed, typed, photostatic, photographic, recorded, electronic or otherwise produced communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, any combination thereof. This definition includes copies or duplicates of documents

[2]

contemporaneously or subsequently created that have any generality of the foregoing, the term "Document" includes, but is not limited to correspondence, memoranda, notes, records letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, work papers, accounts, local records, reports and/or summaries of investigation, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including interoffice and intraoffice communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, discs, drives, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing. "Documents" as defined herein specifically includes electronic versions and computerized formats of all of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, lap tops, and firewalls.

When producing documents, if maintained in an electronic format or presently in an electronic format, these shall be produced in electronic format. This includes producing documents that were provided to outside entities, outside persons or internally in electronic format. Electronic information should be produced in commonly available PC format such as Microsoft Office Suite. If a file was maintained in a format compatible with commonly available PC software, it should be produced in the format in which it was maintained. For example, databases should be produced in either Microsoft Access format

[3]

or Commodore Delimited ASCII; spreadsheets should be produced as Microsoft Excel or comparable spreadsheet files; presentation should be produced as Microsoft Power Point or comparable format. Because of variables which may exist in electronic production, we specifically request a "meet and confer" take place to work out the protocols and variables between those responsible for electronic production and a representative of the Plaintiff.

5.      "Meeting" means any assembly, convocation, or encounter, or contemporaneous presence of two or more persons for any purpose, whether or not planned, arranged, or scheduled in advance.

6.      "Policy" means any rule, procedure, directive, practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized by you.

7.      "Identify" means:

(a)     as to a person (as defined): name, business and residence address(es), occupation, job title, educational background; dates so employed; and, if not an individual, state the type of entity and the address of its principal place of business;

(b)     as to a document: the type of document (letter, memo, etc.), the identity of the author or originator, the date authored or originator, the date authored or originated, the identity of each person to whom the original or copy was addressed or delivered, by the identity of such person known or reasonably believed by you to have present possession, custody, or control thereof, and a brief description of the subject matter thereof, all with sufficient particularity to request its production;

[4]

(c)    as to a communication: the date of the communication, the type of communication (telephone conversation, meeting, etc.), the place where the communication took place, the identity of the person who made the communication, the identity of each person who received the communication, and of each person present when it was made, and the subject matter discussed; and

(d)    as to a meeting: the date of the meeting, the place of the meeting, each person invited to attend, each person who attended, and the subject matter discussed at same.

8.    "Or" shall be construed either conjunctively or disjunctively to bring within the scope of these interrogatories any information which might otherwise be construed to be outside their scope.

9.    The singular includes the plural number, and vice versa.  The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

10.    "Plaintiff" refers to Plaintiff Monique Foster.

11.    "DeKalb Pathology" refers to Defendant DeKalb Pathology, P.C.

12.    "Dr. Gowda" refers to Defendant Vinay B. Gowda, M.D.

13.    "Piedmont Henry Hospital" refers to Defendant Piedmont Henry Hospital, Inc.

14.    "MD Anderson" refers to Defendant The University of Texas M.D. Anderson Cancer Center.

[5]

15.     "Dr. Estrella" refers to Defendant Jeannelyn S. Estrella, M.D.

16.     "Peachtree Associates" refers to Defendant Peachtree-Piedmont Associates, P.C.

17.     "Peachtree Lab" refers to Defendant Peachtree Laboratory Associates, P.C.

18.     "Piedmont Pathology" refers to Defendant Peachtree-Piedmont Pathology, P.C.

19.     "Dr. Chandler" refers to Defendant Katherine L. Chandler, M.D.

20.     "Dr. Point du Jour" refers to Defendant Kimberly S. Point du Jour, M.D.

21.     "Dr. Snyder" refers to Defendant Tamela M. Snyder, M.D.

22.     "Piedmont Atlanta Hospital" refers to Defendant Piedmont Hospital, Inc.

23.     "Piedmont Healthcare" refers to Defendant Piedmont Healthcare, Inc.

24.     "Defendants" refers collectively to all named Defendants.

25.     "First Pathology Slides" refers to pathology slides under Accession # HS23-04319, which were prepared from tissue samples collected from Plaintiff on 7/25/2023.

26.     "Second Pathology Slides" refers to pathology slides under Accession # HS23-04493, which were prepared from tissue samples collected from Plaintiff on 8/02/2023.

27.     "Third Pathology Slides" refers to pathology slides under Accession # PC23-01787, which were prepared from tissue samples collected from Plaintiff on 8/07/2023.

28.     "Standard of Care" is that degree of care and skill ordinarily employed by physicians generally under similar conditions and like surrounding circumstances.

[6]

## <u>REQUESTS FOR ADMISSION</u>

1.      You were properly served with a Summons and a copy of the Complaint.

2.      Your name as at it appears in the Complaint is correct.

3.      The State Court of DeKalb County has personal jurisdiction over you for this case.

4.      The State Court of DeKalb County has subject matter jurisdiction over this case.

5.      Venue is proper in DeKalb County.

6.      Plaintiff has not failed to join a party under O.C.G.A. § 9-11-19.

7.      You had not completed a fellowship in gastrointestinal pathology by August 2023.

8.      You did not have subspecialty expertise in gastrointestinal pathology in August 2023.

9.      You participated in an intradepartmental consultation at Piedmont Atlanta Hospital regarding the Third Pathology Slides.

10.     You had a physician-patient relationship with Plaintiff when you participated in an intradepartmental consultation at Piedmont Atlanta Hospital regarding the Third Pathology Slides.

11.     The physician-patient relationship is one of trust.

12.     The physician-patient relationship is one of confidence.

13.     You reviewed the Third Pathology Slides under a microscope at Piedmont Atlanta Hospital.

[7]

14.     You reviewed the Third Pathology Slides with Dr. Chandler.

15.     You reviewed the Third Pathology Slides with Dr. Snyder.

16.     You consulted with Dr. Chandler about the Third Pathology Slides.

17.     You assisted Dr. Chandler in reaching the diagnosis for the Third Pathology Slides.

18.     Dr. Chandler reported the following diagnosis for the Third Pathology Slides in Plaintiff's

        medical records at Piedmont Atlanta Hospital:

**Final Diagnosis**
A. Lymph node, perigastric, biopsy:
        – Negative for malignant cells
        – Fragments of benign lymphoid tissue.

B. Stomach, biopsy:
        – Rare malignant cells consistent with adenocarcinoma (see comment)

C. Stomach, biopsy.
        – Rare malignant cells consistent with adenocarcinoma (see comment).

Electronically signed by Katherine Chandler, MD on 8/11/2023 at 1738

19.     It was beneath the Standard of Care for Dr. Chandler to report that cells on the Third

        Pathology Slides were malignant and consistent with adenocarcinoma.

20.     You were an employee of Peachtree Associates when you consulted with Dr. Chandler

        about the Third Pathology Slides.

21.     You acted within the course and scope of your employment with Peachtree Associates

        when you consulted with Dr. Chandler about the Third Pathology Slides.

22.     You were an agent of Peachtree Associates when you consulted with Dr. Chandler about

        the Third Pathology Slides.

[8]

23.    You acted within the course and scope of your agency relationship with Peachtree Associates when you consulted with Dr. Chandler about the Third Pathology Slides.

24.    You were an employee of Peachtree Lab when you consulted with Dr. Chandler about the Third Pathology Slides.

25.    You acted within the course and scope of your employment with Peachtree Lab when you consulted with Dr. Chandler about the Third Pathology Slides.

26.    You were an agent of Peachtree Lab when you consulted with Dr. Chandler about the Third Pathology Slides.

27.    You acted within the course and scope of your agency relationship with Peachtree Lab when you consulted with Dr. Chandler about the Third Pathology Slides.

28.    You were an employee of Piedmont Pathology when you consulted with Dr. Chandler about the Third Pathology Slides.

29.    You acted within the course and scope of your employment with Piedmont Pathology when you consulted with Dr. Chandler about the Third Pathology Slides.

30.    You were an agent of Piedmont Pathology when you consulted with Dr. Chandler about the Third Pathology Slides.

31.    You acted within the course and scope of your agency relationship with Piedmont Pathology when you consulted with Dr. Chandler about the Third Pathology Slides.

32.    You were an employee of Piedmont Atlanta Hospital when you when you consulted with Dr. Chandler about the Third Pathology Slides.

[9]

33.    You acted within the course and scope of your employment with Piedmont Atlanta Hospital when you when you consulted with Dr. Chandler about the Third Pathology Slides.

34.    You were an agent of Piedmont Atlanta Hospital when you when you consulted with Dr. Chandler about the Third Pathology Slides.

35.    You acted within the course and scope of your agency relationship with Piedmont Atlanta Hospital when you when you consulted with Dr. Chandler about the Third Pathology Slides.

36.    You were an employee of Piedmont Healthcare when you when you consulted with Dr. Chandler about the Third Pathology Slides.

37.    You acted within the course and scope of your employment with Piedmont Healthcare when you when you consulted with Dr. Chandler about the Third Pathology Slides.

38.    You were an agent of Piedmont Healthcare when you when you consulted with Dr. Chandler about the Third Pathology Slides.

39.    You acted within the course and scope of your agency relationship with Piedmont Healthcare when you when you consulted with Dr. Chandler about the Third Pathology Slides.

This the 11th day of July, 2025.

MORGAN & MORGAN ATLANTA, PLLC

*/s/ Keenan R.S. Nix*
Keenan R.S. Nix
Georgia Bar No. 544855
Christopher J. Graddock
Georgia Bar No. 304020
*Counsel for Plaintiff*

STATE COURT OF
DEKALB COUNTY, GA.
7/11/2025 9:43 AM
E-FILED
BY: Monique Roberts

[10]

Post Office Box 57007
Atlanta, Georgia 30343-1007
Phone: (404) 965-8811
Fax: (404) 965-8812
Email: knix@forthepeople.com
Email: cgraddock@forthepeople.com

**ILARDI LAW, LLC**

*/s/ Frank A. Ilardi*_____ ____
Frank A. Ilardi
Georgia Bar No. 382028
*Co-Counsel for Plaintiff*

1201 Peachtree Street, NE – Suite 2000
Atlanta, Georgia 30361
Phone / Fax: (470) 443-9060
Email: frank@ilawgeorgia.com

STATE COURT OF
DEKALB COUNTY, GA.
7/11/2025 9:43 AM
E-FILED
BY: Monique Roberts

# IN THE STATE COURT OF DEKALB COUNTY
## STATE OF GEORGIA

MONIQUE FOSTER,                           )
                                          )
    Plaintiff,                            )
                                          )
v.                                        )       CIVIL ACTION FILE
                                          )       NO.   25A04827
DEKALB PATHOLOGY, P.C.,                    )
VINAY B. GOWDA, M.D.,                       )
PIEDMONT HENRY HOSPITAL, INC.,              )
THE UNIVERSITY OF TEXAS                     )
M.D. ANDERSON CANCER CENTER,                )
JEANNELYN S. ESTRELLA, M.D.,                )
PEACHTREE-PIEDMONT ASSOCIATES, P.C.,        )
PEACHTREE LABORATORY ASSOCIATES, P.C.,)
PEACHTREE-PIEDMONT PATHOLOGY, P.C.,         )
KATHERINE L. CHANDLER, M.D.,                )
KIMBERLY S. POINT DU JOUR, M.D.,            )
TAMELA M. SNYDER, M.D.,                     )
PIEDMONT HOSPITAL, INC.,                     )
PIEDMONT HEALTHCARE, INC., and              )
JOHN DOES 1-5,                              )
                                          )
    Defendants.                           )

---

## PLAINTIFF MONIQUE FOSTER'S INTERROGATORIES TO
## DEFENDANT KIMBERLY S. POINT DU JOUR, M.D.

---

Plaintiff Monique Foster propounds the following Interrogatories to Defendant Kimberly

S. Point du Jour, M.D. pursuant to O.C.G.A. § 9-11-33.

## INSTRUCTIONS

Pursuant to O.C.G.A. § 9-11-33(b)(2), an interrogatory may ask a party to state "an opinion

or contention that relates to fact or to the application of law to fact…." In responding, each

defendant is requested to furnish such information as is available to that defendant, and within

the knowledge of any of that defendant's attorneys, investigators, agents, employees, and

other representatives. Thus, when a question is directed to the defendant the question is also directed to the aforementioned persons. To the extent any information called for is objected to upon a claim of privilege, you must provide a privilege log as required by Uniform State Court Rule 5.5 with enough information for the Court to adjudicate your claim of privilege. These interrogatories are continuing so as to require supplemental responses if the persons or entities to whom these discovery requests are addressed obtain further information between the time the initial answers are served and the time of trial. Please answer the following Interrogatories in full and under oath.

## **DEFINITIONS**

1.    "You" or "your" means the person or entity to whom these discovery requests are addressed; its officers, directors, agents and employees; or any merged, consolidated, or acquired predecessor or successor, parent, subsidiary, division, or affiliate; or any person acting on your behalf; or any person within a "controlled group of corporations" of which you are a member.

2.    "Person" means any individual, corporation, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, or other such entity.

3.    "Communicate" or "communications" means very manner or means of disclosure, transfer, or exchange, and disclosure, transfer or exchange of information whether orally or by document or whether face-to-face, by telephone, mail, personal delivery, or otherwise.

4.    "Document" is used in the broadest possible sense meaning anything which may be considered to be a document within the meaning of the rules of the Rules of Civil Procedure and means and includes, without limitation, any written, printed, typed, photostatic,

[2]

photographic, recorded, electronic or otherwise produced communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any generality of the foregoing, the term "Document" includes, but is not limited to correspondence, memoranda, notes, records letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, work papers, accounts, local records, reports and/or summaries of investigation, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including interoffice and intraoffice communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, discs, drives, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing. "Documents" as defined herein specifically includes electronic versions and computerized formats of all of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, lap tops, and firewalls.

When producing documents, if maintained in an electronic format or presently in an electronic format, these shall be produced in electronic format. This includes producing documents that were provided to outside entities, outside persons or internally in electronic format. Electronic information should be produced in commonly available PC

[3]

format such as Microsoft Office Suite. If a file was maintained in a format compatible with commonly available PC software, it should be produced in the format in which it was maintained. For example, databases should be produced in either Microsoft Access format or Commodore Delimited ASCII; spreadsheets should be produced as Microsoft Excel or comparable spreadsheet files; presentation should be produced as Microsoft Power Point or comparable format. Because of variables which may exist in electronic production, we specifically request a "meet and confer" take place to work out the protocols and variables between those responsible for electronic production and a representative of the Plaintiff.

5.    "Meeting" means any assembly, convocation, or encounter, or contemporaneous presence of two or more persons for any purpose, whether or not planned, arranged, or scheduled in advance.

6.    "Policy" means any rule, procedure, directive, practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized by you.

7.    "Identify" means:

(a)    as to a person (as defined): name, business and residence address(es), occupation, job title, educational background; dates so employed; and, if not an individual, state the type of entity and the address of its principal place of business;

(b)    as to a document: the type of document (letter, memo, etc.), the identity of the author or originator, the date authored or originator, the date authored or originated, the identity of each person to whom the original or copy was addressed or delivered,

[4]

by the identity of such person known or reasonably believed by you to have present possession, custody, or control thereof, and a brief description of the subject matter thereof, all with sufficient particularity to request its production;

(c)    as to a communication: the date of the communication, the type of communication (telephone conversation, meeting, etc.), the place where the communication took place, the identity of the person who made the communication, the identity of each person who received the communication, and of each person present when it was made, and the subject matter discussed; and

(d)    as to a meeting: the date of the meeting, the place of the meeting, each person invited to attend, each person who attended, and the subject matter discussed at same.

8.    "Or" shall be construed either conjunctively or disjunctively to bring within the scope of these interrogatories any information which might otherwise be construed to be outside their scope.

9.    The singular includes the plural number, and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

10.    "Plaintiff" refers to Plaintiff Monique Foster.

11.    "DeKalb Pathology" refers to Defendant DeKalb Pathology, P.C.

12.    "Dr. Gowda" refers to Defendant Vinay B. Gowda, M.D.

13.    "Piedmont Henry Hospital" refers to Defendant Piedmont Henry Hospital, Inc.

[5]

14.    "MD Anderson" refers to Defendant The University of Texas M.D. Anderson Cancer Center.

15.    "Dr. Estrella" refers to Defendant Jeannelyn S. Estrella, M.D.

16.    "Peachtree Associates" refers to Defendant Peachtree-Piedmont Associates, P.C.

17.    "Peachtree Lab" refers to Defendant Peachtree Laboratory Associates, P.C.

18.    "Piedmont Pathology" refers to Defendant Peachtree-Piedmont Pathology, P.C.

19.    "Dr. Chandler" refers to Defendant Katherine L. Chandler, M.D.

20.    "Dr. Point du Jour" refers to Defendant Kimberly S. Point du Jour, M.D.

21.    "Dr. Snyder" refers to Defendant Tamela M. Snyder, M.D.

22.    "Piedmont Atlanta Hospital" refers to Defendant Piedmont Hospital, Inc.

23.    "Piedmont Healthcare" refers to Defendant Piedmont Healthcare, Inc.

24.    "Defendants" refers collectively to all named Defendants.

25.    "First Pathology Slides" refers to pathology slides under Accession # HS23-04319, which were prepared from tissue samples collected from Plaintiff on 7/25/2023.

26.    "Second Pathology Slides" refers to pathology slides under Accession # HS23-04493, which were prepared from tissue samples collected from Plaintiff on 8/02/2023.

27.    "Third Pathology Slides" refers to pathology slides under Accession # PC23-01787, which were prepared from tissue samples collected from Plaintiff on 8/07/2023.

[6]

28.    "Standard of Care" is that degree of care and skill ordinarily employed by physicians generally under similar conditions and like surrounding circumstances.

## INTERROGATORIES

1.    Please provide the names and addresses for all insurance companies that may be liable to satisfy part or all of a judgment which may be entered against you on Plaintiff's claims.

2.    Please itemize how much insurance is available to you to satisfy part or all of a judgment which may be entered on Plaintiff's claims.

3.    Please explain the nature of the relationship that existed between you and the other Defendants in July 2023 and August 2023. Your response should include, but is not limited to, when that relationship started and ended (if applicable).

4.    Had you completed a fellowship in gastrointestinal pathology prior to July 2023? Please answer "yes" or "no." If your answer is "yes," then please identify the corresponding institution and date of completion.

5.    Did you have subspecialty expertise in gastrointestinal pathology prior to July 2023? Please answer "yes" or "no." If your answer is "yes," then please provide the factual basis for your response.

6.    Please explain why, when, and how (i.e. in person, by phone, video conference, text, and / or email) you were asked to be part of an intradepartmental consultation with regard to the Third Pathology Slides.

7.    Please describe the intradepartmental consultation that took place regarding the Third Pathology Slides. Your response should include, but is not limited to:

[7]

(a)    who suggested that consultation take place;

(b)    who was present;

(c)    what information about Plaintiff was available;

(d)    what medical records for Plaintiff were available;

(e)    what medical records for Plaintiff were reviewed;

(f)    where and when the consultation happened; and

(g)    whether you reviewed the Third Pathology Slides under a microscope.

8.    Did you agree with Dr. Chandler's diagnosis that cells on the Third Pathology Slides were consistent with adenocarcinoma when you participated in the intradepartmental consultation about those pathology slides? Please answer "yes" or "no." If your answer is "yes," then please describe with specificity why you agreed with that diagnosis.

9.    Were you are aware of Dr. Gowda and / or Dr. Estrella's diagnosis for the First Pathology Slides before you participated in the intradepartmental consultation about the Third Pathology Slides? Please answer "yes" or "no." If your answer is "yes," then please explain when, how, and why you became aware of that information.

10.    Were you are aware of Dr. Gowda diagnosis for the Second Pathology Slides before you participated in the intradepartmental consultation about the Third Pathology Slides? Please answer "yes" or "no." If your answer is "yes," then please explain when, how, and why you became aware of that information.

[8]

11.   Please state whether you reviewed and / or were consulted about the First Pathology Slides before Plaintiff's stomach was removed. Please answer "yes" or "no." If your answer is "yes," then please explain why, when, and how (i.e. in person, by phone, video conference, text, and / or email) that review and / or consultation took place.

12.   Please state whether you reviewed and / or were consulted about the Second Pathology Slides before Plaintiff's stomach was removed. Please answer "yes" or "no." If your answer is "yes," then please explain why, when, and how (i.e. in person, by phone, video conference, text, and / or email) that review and / or consultation took place.

13.   Please identify each communication you had with the other individually named Defendants before Plaintiff's stomach was removed.

14.   Did you participate in a tumor board meeting regarding Plaintiff before her stomach was removed? Please answer "yes" or "no." If your answer is "yes," then please explain when that meeting place, where it happened, and who was present.

15.   Please identify each communication you had with any person at MD Anderson after Plaintiff's stomach was removed.

16.   Please identify each communication you had with any person at Johns Hopkins Reference Laboratories after Plaintiff's stomach was removed.

17.   Please identify any typographical errors, missing records, or other inaccuracies that may exist in any portion of Plaintiff's original medical records from Piedmont Henry Hospital and / or Piedmont Atlanta Hospital in July 2023 and August 2023.

[9]

18.  Please identify any changes, additions, and / or deletions that you made to any of the original entries in Plaintiff's medical records for when she was a patient at Piedmont Henry Hospital and / or Piedmont Atlanta Hospital in July 2023 and August 2023 and state when and why you made each change, addition, and / or deletion.

19.  Has your medical license ever been restricted, suspended, or revoked? Please answer "yes" or "no." If your answer is "yes," then please identify the date of each such action against your license and the state in which it / they occurred.

20.  Have your privileges to work at a hospital have ever been restricted, suspended, or revoked? Please answer "yes" or "no." If your answer is "yes," then please identify the date of each such action against your privileges and the corresponding hospital(s).

21.  Have you have ever been a plaintiff or a defendant in a lawsuit? Please answer "yes" or "no." If your answer is "yes," then please provide a summary of the claims and identify the state and county where the lawsuit was filed.

22.  For each expert who you expect to call at trial, please provide:

    (a)  the name, address, and occupation of the witness;

    (b)  the subject matter on which the expert is expected to testify;

    (c)  the substance of the facts and opinions to which the expert is expected to testify; and

    (d)  a summary of the grounds for the expert's opinions.

[10]

This the 11th day of July, 2025.

MORGAN & MORGAN ATLANTA, PLLC

/s/ Keenan R.S. Nix
Keenan R.S. Nix
Georgia Bar No. 544855
Christopher J. Graddock
Georgia Bar No. 304020
*Counsel for Plaintiff*

Post Office Box 57007
Atlanta, Georgia 30343-1007
Phone: (404) 965-8811
Fax: (404) 965-8812
Email: knix@forthepeople.com
Email: cgraddock@forthepeople.com

ILARDI LAW, LLC

/s/ Frank A. Ilardi
Frank A. Ilardi
Georgia Bar No. 382028
*Co-Counsel for Plaintiff*

1201 Peachtree Street, NE – Suite 2000
Atlanta, Georgia 30361
Phone / Fax: (470) 443-9060
Email: frank@ilawgeorgia.com

STATE COURT OF
DEKALB COUNTY, GA.
7/11/2025 9:43 AM
E-FILED
BY: Monique Roberts

[11]

## IN THE STATE COURT OF DEKALB COUNTY
## STATE OF GEORGIA

MONIQUE FOSTER,                            )
                                           )
    Plaintiff,                         )
                                           )
v.                                         )     CIVIL ACTION FILE
                                           )     NO.  25A04827
DEKALB PATHOLOGY, P.C.,                    )
VINAY B. GOWDA, M.D.,                      )
PIEDMONT HENRY HOSPITAL, INC.,             )
THE UNIVERSITY OF TEXAS                    )
M.D. ANDERSON CANCER CENTER,               )
JEANNELYN S. ESTRELLA, M.D.,               )
PEACHTREE-PIEDMONT ASSOCIATES, P.C.,       )
PEACHTREE LABORATORY ASSOCIATES, P.C.,)
PEACHTREE-PIEDMONT PATHOLOGY, P.C.,        )
KATHERINE L. CHANDLER, M.D.,               )
KIMBERLY S. POINT DU JOUR, M.D.,           )
TAMELA M. SNYDER, M.D.,                    )
PIEDMONT HOSPITAL, INC.,                   )
PIEDMONT HEALTHCARE, INC., and             )
JOHN DOES 1-5,                             )
                                           )
    Defendants.                        )

---

## PLAINTIFF MONIQUE FOSTER'S REQUESTS FOR PRODUCTION
## OF DOCUMENTS TO DEFENDANT KIMBERLY S. POINT DU JOUR, M.D.

---

Plaintiff Monique Foster propounds the following Requests for Production of Documents to Defendant Kimberly S. Point du Jour, M.D. pursuant to O.C.G.A. § 9-11-34.

## INSTRUCTIONS

Responsive documents must be served within the time provided by Georgia law. If you withheld production of any documents, then please produce a privilege log as required by Uniform State Court Rule 5.5 with enough information for the Court to adjudicate your claim of privilege. These document requests are continuing so as to require supplemental responses if the persons or

entities to whom these discovery requests are addressed obtain further materials or documents between the time the initial answers are served and the time of trial.

## DEFINITIONS

1.  "You" or "your" means the person or entity to whom these discovery requests are addressed; its officers, directors, agents and employees; or any merged, consolidated, or acquired predecessor or successor, parent, subsidiary, division, or affiliate; or any person acting on your behalf; or any person within a "controlled group of corporations" of which you are a member.

2.  "Person" means any individual, corporation, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, or other such entity.

3.  "Communicate" or "communications" means very manner or means of disclosure, transfer, or exchange, and disclosure, transfer or exchange of information whether orally or by document or whether face-to-face, by telephone, mail, personal delivery, or otherwise.

4.  "Document" is used in the broadest possible sense meaning anything which may be considered to be a document within the meaning of the rules of the Rules of Civil Procedure and means and includes, without limitation, any written, printed, typed, photostatic, photographic, recorded, electronic or otherwise produced communication or representation, whether comprised of letters, words, numbers, pictures, sound or symbols, any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any generality of the foregoing, the term "Document" includes, but is not limited to correspondence, memoranda, notes, records letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements,

[2]

working papers, summaries, statistical statements, financial statements, work papers, accounts, local records, reports and/or summaries of investigation, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including interoffice and intraoffice communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, discs, drives, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing. "Documents" as defined herein specifically includes electronic versions and computerized formats of all of the foregoing and shall also include electronic communications, whether maintained presently in the normal course of business or available in back-up or legacy data formats, wherever found or maintained, including all servers, hard drives, lap tops, and firewalls.

When producing documents, if maintained in an electronic format or presently in an electronic format, these shall be produced in electronic format. This includes producing documents that were provided to outside entities, outside persons or internally in electronic format. Electronic information should be produced in commonly available PC format such as Microsoft Office Suite. If a file was maintained in a format compatible with commonly available PC software, it should be produced in the format in which it was maintained. For example, databases should be produced in either Microsoft Access format or Commodore Delimited ASCII; spreadsheets should be produced as Microsoft Excel or comparable spreadsheet files; presentation should be produced as Microsoft Power Point or comparable format. Because of variables which may exist in electronic production,

[3]

we specifically request a "meet and confer" take place to work out the protocols and variables between those responsible for electronic production and a representative of the Plaintiff.

5.    "Meeting" means any assembly, convocation, or encounter, or contemporaneous presence of two or more persons for any purpose, whether or not planned, arranged, or scheduled in advance.

6.    "Policy" means any rule, procedure, directive, practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized by you.

7.    "Identify" means:

   (a)    as to a person (as defined): name, business and residence address(es), occupation, job title, educational background; dates so employed; and, if not an individual, state the type of entity and the address of its principal place of business;

   (b)    as to a document: the type of document (letter, memo, etc.), the identity of the author or originator, the date authored or originator, the date authored or originated, the identity of each person to whom the original or copy was addressed or delivered, by the identity of such person known or reasonably believed by you to have present possession, custody, or control thereof, and a brief description of the subject matter thereof, all with sufficient particularity to request its production;

   (c)    as to a communication: the date of the communication, the type of communication (telephone conversation, meeting, etc.), the place where the communication took

[4]

place, the identity of the person who made the communication, the identity of each person who received the communication, and of each person present when it was made, and the subject matter discussed; and

(d)    as to a meeting: the date of the meeting, the place of the meeting, each person invited to attend, each person who attended, and the subject matter discussed at same.

8.    "Or" shall be construed either conjunctively or disjunctively to bring within the scope of these interrogatories any information which might otherwise be construed to be outside their scope.

9.    The singular includes the plural number, and vice versa.  The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

10.    "Plaintiff" refers to Plaintiff Monique Foster.

11.    "DeKalb Pathology" refers to Defendant DeKalb Pathology, P.C.

12.    "Dr. Gowda" refers to Defendant Vinay B. Gowda, M.D.

13.    "Piedmont Henry Hospital" refers to Defendant Piedmont Henry Hospital, Inc.

14.    "MD Anderson" refers to Defendant The University of Texas M.D. Anderson Cancer Center.

15.    "Dr. Estrella" refers to Defendant Jeannelyn S. Estrella, M.D.

16.    "Peachtree Associates" refers to Defendant Peachtree-Piedmont Associates, P.C.

[5]

17.    "Peachtree Lab" refers to Defendant Peachtree Laboratory Associates, P.C.

18.    "Piedmont Pathology" refers to Defendant Peachtree-Piedmont Pathology, P.C.

19.    "Dr. Chandler" refers to Defendant Katherine L. Chandler, M.D.

20.    "Dr. Point du Jour" refers to Defendant Kimberly S. Point du Jour, M.D.

21.    "Dr. Snyder" refers to Defendant Tamela M. Snyder, M.D.

22.    "Piedmont Atlanta Hospital" refers to Defendant Piedmont Hospital, Inc.

23.    "Piedmont Healthcare" refers to Defendant Piedmont Healthcare, Inc.

24.    "Defendants" refers collectively to all named Defendants.

25.    "First Pathology Slides" refers to pathology slides under Accession # HS23-04319, which were prepared from tissue samples collected from Plaintiff on 7/25/2023.

26.    "Second Pathology Slides" refers to pathology slides under Accession # HS23-04493, which were prepared from tissue samples collected from Plaintiff on 8/02/2023.

27.    "Third Pathology Slides" refers to pathology slides under Accession # PC23-01787, which were prepared from tissue samples collected from Plaintiff on 8/07/2023.

28.    "Standard of Care" is that degree of care and skill ordinarily employed by physicians generally under similar conditions and like surrounding circumstances.

## DOCUMENT REQUESTS

1.    Please produce a complete copy of any and all insurance policies that may be liable to satisfy all or part of a judgment which may be entered in this action or to indemnify or

[6]

reimburse for payments made to satisfy the judgment as required by O.C.G.A. § 9-11-26 (b)(2). Please produce the *entire policy* of any primary and excess layers. Do not *only* produce a summary or a declaration page of your coverage.

2.     Please produce a color copy of your driver's license.

3.     Please produce all contracts and agreements that create or define the relationship that existed between you and Peachtree Associates in August 2023.

4.     Please produce all contracts and agreements that create or define the relationship that existed between you and Peachtree Lab in August 2023.

5.     Please produce all contracts and agreements that create or define the relationship that existed between you and Piedmont Pathology in August 2023.

6.     Please produce all contracts and agreements that create or define the relationship that existed between you and Piedmont Atlanta Hospital in August 2023.

7.     Please produce all contracts and agreements that create or define the relationship that existed between you and Piedmont Healthcare in August 2023.

8.     Please produce all notes you took while reviewing the Third Pathology Slides.

9.     Please produce all medical records you prepared regarding Plaintiff.

10.    Please produce all bills you submitted for reviewing the Third Pathology Slides.

11.    Please produce all photomicrographs taken from the First Pathology Slides, the Second Pathology Slides, and / or the Third Pathology Slides.

[7]

12.    Please produce all photomicrographs taken from pathology slides that were prepared from portions of Plaintiff's stomach after it was removed.

13.    Please produce all communications you had with any person including, but not limited to, other healthcare providers regarding Plaintiff.

14.    Please produce a copy of any and all written or recorded statements you provided about Plaintiff and / or the subject of the Complaint. If you refuse to produce a copy of any such statement, please state when you gave the statement, who obtained the statement, the format of the statement i.e., whether it is a written or recorded statement, when it was obtained, and the basis for withholding that statement.

15.    Please produce all photographs, images, films, and / or videos taken of Plaintiff.

16.    Please produce all documents you receive in response to non-party requests for production of documents or things.

17.    Please produce all documents you were asked to identify in Plaintiff's Interrogatories and all documents you identified in response to the same.

18.    Other than communications with your lawyers, please produce a copy of all communications that you have had with anyone concerning the Plaintiff and / or the event that is the subject of the Complaint including, but not limited to, letters, faxes, emails, text messages, and voicemails.

19.    Please produce the COMPLETE file of each expert witness you intend to call to trial including, but not limited to:

       (a)    the expert's current curriculum vitae;

[8]

(b)     the expert's fee schedule;

(c)     a list of the expert's prior deposition and trial testimony;

(d)     any and all documents provided to the expert witness and / or reviewed, prepared, and / or relied on by the expert such as medical records, depositions, notes, memoranda, and literature;

(e)     all communications showing when the expert was hired and what materials were provided when; and

(f)     bills / invoices for the expert's work performed on the case.

20.     Please produce all evidence you intend to tender at trial.

This the 11th day of July, 2025.

**MORGAN & MORGAN ATLANTA, PLLC**

/s/ Keenan R.S. Nix
Keenan R.S. Nix
Georgia Bar No. 544855
Christopher J. Graddock
Georgia Bar No. 304020
*Counsel for Plaintiff*

Post Office Box 57007
Atlanta, Georgia 30343-1007
Phone: (404) 965-8811
Fax: (404) 965-8812
Email: knix@forthepeople.com
Email: cgraddock@forthepeople.com

**ILARDI LAW, LLC**

/s/ Frank A. Ilardi
Frank A. Ilardi
Georgia Bar No. 382028
*Co-Counsel for Plaintiff*

STATE COURT OF
DEKALB COUNTY, GA.
7/11/2025 9:43 AM
E-FILED
BY: Monique Roberts

[9]

1201 Peachtree Street, NE – Suite 2000
Atlanta, Georgia 30361
Phone / Fax: (470) 443-9060
Email: frank@ilawgeorgia.com

[10]